# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Natalie R. Laskey, Executrix of The Estate of Stephen Robert Laskey | : CASES CONSOLIDATED<br>:<br>: |
| v. | : No. 1224 C.D. 2019<br>: |
| North Union Township, a second class municipality of the Commonwealth of Pennsylvania,<br>Appellant | :<br>:<br>:<br>: |
| Natalie R. Laskey, Executrix of The Estate of Stephen Robert Laskey,<br>Appellant | :<br>:<br>:<br>:<br>: |
| v.<br>North Union Township, a second class municipality of the Commonwealth of Pennsylvania | : No. 1350 C.D. 2019<br>:<br>:<br>: SUBMITTED: October 13, 2020 |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  November 9, 2020

North Union Township (Township) appeals from the August 29, 2019 Judgment entered by the Court of Common Pleas of Fayette County (Trial Court) in the amount of $75,000 in favor of Natalie R. Laskey, Executrix of the Estate of Stephen Robert Laskey (Laskey).[1]  Laskey has also filed a cross-appeal from the Judgment, seeking an award of prejudgment interest.

---

[1] Stephen Robert Laskey and his business, Steve's Restaurant Appliance and Food Preparation Equipment, were the original plaintiffs when this matter initiated in the Trial Court in **(Footnote continued on next page…)**

This appeal stems from a jury trial in a breach of contract case. The original parties to the contract were the Township and Texas Eastern Transmission, L.P. (Texas Eastern).[2] However, Texas Eastern subsequently assigned its rights to Laskey as a result of a settlement agreement. The breach of contract case eventually proceeded to trial, and a jury entered a verdict in favor of Laskey and against the Township, awarding Laskey $75,000 in damages, attorneys' fees, and costs.

Both parties filed timely Post-Trial Motions, but the Trial Court never ruled on the Motions, despite previously scheduling a hearing to consider them. As discussed more fully below, because we conclude that the Judgment was entered prematurely, and because the parties' Post-Trial Motions are still outstanding, we vacate the Judgment and remand this matter to the Trial Court for further proceedings.

## Background

Laskey owns and operates an appliance repair business on a one-acre parcel located on Industrial Drive in Mount Braddock, Pennsylvania. Industrial Drive is adjacent to Ainsley Lane, a Township-owned road. The Township owns a five-acre parcel adjacent to Ainsley Lane, on which it operates a municipal park, a baseball field, and a parking area. Texas Eastern leases property on Connellsville Road, also adjacent to Ainsley Lane, on which it operates a pipe yard for the storage and distribution of gas transmission pipelines.

---

2011. Mr. Laskey died in November 2018. Thereafter, his wife, Natalie R. Laskey, became the Executrix of Mr. Laskey's estate, and the Estate of Stephen Robert Laskey was substituted as the plaintiff in the proceedings below. For ease of reference, we refer to Mr. Laskey and his Estate interchangeably as "Laskey."

[2] Texas Eastern was one of the original defendants in the proceedings before the Trial Court. The Trial Court eventually removed Texas Eastern from the caption of the case and permitted its counsel to withdraw before trial due to a settlement agreement. However, Texas Eastern was never formally dismissed as a party. Trial Ct. Stmt. in Lieu of Op., 12/13/19, at 11.

In May 2011, the Township entered into an agreement with Texas Eastern, wherein Texas Eastern paid $50,000 to the Township as payment "in full for damages sustained from Texas Eastern's use of Ainsley Lane, paving materials for Ainsley Lane[,] and installation of a storm drain in front of Stephen Laskey's property to address drainage issue." Reproduced Record (R.R.) at 64c. The Township and Texas Eastern also signed a document titled "Release" (2011 Release), which stated that Texas Eastern's $50,000 payment was for the costs of grading and repaving Ainsley Lane and installing a storm drain. The 2011 Release further provided:

> [I]n consideration of the aforementioned and acknowledging the receipt of [$50,000,] *the Township releases and discharges Texas Eastern from and against any and all claims, demands, causes of action, either direct or consequential, costs, expenses (including, but not limited to[,] attorneys' fees), losses and compensation of any kind in law or in equity of the demands and conditions from any and all claims, demands and causes of action that the Township or any third party has or may have associated with Ainsley Lane, the repair of Ainsley Lane, or Texas Eastern's use of Ainsley Lane.* The release is for the benefit of Texas Eastern and its successors and assigns and shall bind the Township and its successors and assigns.

*Id.* at 63c (emphasis added).

In May 2011, Laskey initiated this action by filing a writ of summons in the Trial Court. In November 2011, Laskey filed a Complaint against the Township and Texas Eastern, alleging damages caused by stormwater runoff and flooding on his property. Laskey averred that both defendants were negligent in developing and maintaining their properties, which caused excessive stormwater to flow onto Laskey's property since at least 2009. Laskey also averred that both defendants were negligent in maintaining Ainsley Lane, causing further damage to Laskey's property.

3

In April 2015, Texas Eastern filed a cross-claim for breach of contract against the Township. Texas Eastern alleged that the Township breached the terms of the 2011 Release by failing to perform any of the work specified in the agreement. Texas Eastern averred that, as of that date, the Township had not regraded or repaved Ainsley Lane, nor had it installed a storm drain to alleviate the drainage and stormwater runoff problems on Laskey's property.

In December 2017, Laskey settled its negligence claims against the Township with the Township's liability insurer, Selective Insurance Company, in the amount of $127,500. *See* R.R. at 66c-67c.

Also in December 2017, Laskey settled its negligence claims against Texas Eastern for $38,000. *See* R.R. at 70c-73c. As part of the settlement agreement, Texas Eastern and Laskey signed a "Release" (2017 Release) and an "Assignment of Claim" (2017 Assignment). The 2017 Release provided that Laskey

> [did] hereby release, remise, and forever discharge Texas Eastern . . . of and from any and all actions, causes of action, claims, demands, damages, costs, expenses, or any other recovery whatsoever . . . arising from alleged damage to [Laskey's] real and personal property . . . allegedly caused by multiple surface water run-off incidents . . . against [Texas Eastern], *including but not limited to all claims that were, or could have been, asserted in the civil action filed by [Laskey] in the [Trial Court] . . . .*

R.R. at 70c (emphasis added). The 2017 Assignment provided in pertinent part:

> *Texas Eastern . . . does hereby assign to Stephen Laskey . . . all [of Texas Eastern's] right, title, and interest in and to the cause of action against [the] Township . . . for breach of contract arising out of the [2011 Release], as set forth more fully in the cross-claim filed by [Texas Eastern] in the [Trial Court] . . .* with full right to maintain the action, and to settle and compromise the cause of action, and to give a release in [Texas Eastern's] name in full discharge of the liability under the cause of action.

4

*Id.* at 68c (emphasis added).

In April 2019, Laskey and the Township proceeded to a jury trial on the only remaining cause of action: the breach of contract cross-claim that Texas Eastern had assigned to Laskey. At trial, both parties presented testimony and evidence regarding the 2011 Release between the Township and Texas Eastern, the 2017 Release and the 2017 Assignment between Texas Eastern and Laskey, and the attorneys' fees and costs Texas Eastern incurred in defending the Laskey negligence lawsuit.

On April 17, 2019, following a three-day trial, a jury returned a unanimous verdict in the amount of $75,000 in favor of Laskey and against the Township. The jury specifically found that Laskey (as the assignee of Texas Eastern) proved the validity of the breach of contract claim between Texas Eastern and the Township by a preponderance of the evidence. The jury awarded Laskey: (1) $50,000 in monetary damages, which was the amount Texas Eastern had paid the Township under the 2011 Release; and (2) $25,000 for attorneys' fees and costs incurred by Texas Eastern in defending the negligence lawsuit.

On April 26, 2019, the Township filed a Post-Trial Motion seeking to set aside the jury's verdict. The Township averred, *inter alia*, that "the jury failed to follow the instructions of the [Trial C]ourt and clearly did not understand the legal complexity associated with the documents that were admitted as evidence." R.R. at 14c-15c. On May 6, 2019, Laskey also filed a Post-Trial Motion, seeking an award of prejudgment interest (at a rate of 6% per annum) on the entire $75,000 verdict,

5

totaling $17,940.15. R.R. at 17c. Both parties filed responses to each other's Post-Trial Motion.[3]

The Trial Court originally scheduled a hearing on Laskey's Post-Trial Motion for May 29, 2019. However, the parties were unable to appear on that date, so the Trial Court canceled the hearing. The Trial Court did not schedule a new hearing at that time.

On June 24, 2019, Township filed a Motion for Hearing on the Issue of Prejudgment Interest. In its Motion, the Township averred "that there should be a hearing and oral argument on the issues raised as there are serious questions about whether or not prejudgment interest is justified." R.R. at 26c. The Trial Court did not rule on that Motion.

In its Statement in Lieu of Opinion, the Trial Court explained what transpired with regard to the parties' Post-Trial Motions as follows:

> Counsel for [the] Township and Laskey indicated in emails to the [Trial Court's] law clerk at the time that they were unavailable for argument on May 29, 2019, but the dates proposed by counsel in June [2019] were not open on the [Trial] Court's schedule. There was never any formal motion to continue the argument filed by either of the attorneys, but there was a June 24, 2019 "Motion for Hearing on Issue of Prejudgment Interest["] that this Court declined to grant because the Court believed it to be a legal issue[,] except for the documentary evidence as to interest actually earned by the Township[.] . . . *[The Trial Court] did not think ahead that all of the issues for argument could have been heard at such a hearing. Thereafter, summer vacations and the departure of the [Trial] Court's previous law clerk caused this case to be overlooked.*
>
> . . . .

---

[3] Under Pa. R.C.P. No. 227.1(c)(1), a motion for post-trial relief must be filed within 10 days after the jury's verdict, and if a party has filed a timely post-trial motion, any other party to the action may file post-trial motions within 10 days after the filing of the first post-trial motion.

6

> After the [Township's N]otice of Appeal was filed, the [Trial Court] contacted counsel to indicate that the [Trial] Court believed the Post[-]Trial Motions were still pending. In response[,] . . . counsel for [the] Township did file [a m]otion[] to schedule a hearing. This Court declined to do so at that point, on the belief that the pendency of the appeal deprived this [C]ourt of jurisdiction.

Trial Ct. Stmt. in Lieu of Op., 12/13/19, at 8-9 (emphasis added).

On August 29, 2019, upon Laskey's filing of a Praecipe for Entry of Judgment on the Verdict, the Trial Court entered Judgment in the amount of $75,000 in Laskey's favor. On September 5, 2019, the Township timely appealed to this Court (docketed at 1224 C.D. 2019). Laskey also filed a cross-appeal (docketed at 1350 C.D. 2019), limited to the issue of prejudgment interest.

On September 16, 2019, the Township filed in the Trial Court a Motion to Strike Judgment Pursuant to Pa. R.C.P. No. 227.4. In its Motion to Strike, the Township asserted that Laskey's Praecipe for Entry of Judgment was premature because 120 days had not passed since the filing of Laskey's Post-Trial Motion and, thus, the August 29, 2019 Judgment should be stricken. The Trial Court did not rule on this Motion, due to the pendency of the appeals with this Court. *See* Trial Ct. Stmt. in Lieu of Op., 12/13/19, at 9.

Thereafter, both parties filed a Pa. R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal (Rule 1925(b) Statement) with the Trial Court.

On December 13, 2019, the Trial Court filed a Statement in Lieu of Opinion, in which it effectively reversed many of its prior rulings throughout the litigation. After summarizing the lengthy procedural history of the case, the Trial Court began its analysis by noting that the Township raised 15 issues in its Rule 1925(b) Statement and that Laskey raised only the issue of prejudgment interest.

Turning to the evidence presented at trial, the Trial Court described the 2011 Release between the Township and Texas Eastern as follows:

> [Texas Eastern's] cross-claim[, which was assigned to Laskey,] was contractual, and the document involved was captioned and written as a "Release," which was drafted by Texas Eastern.
>
> However, the "Release" was actually a poorly drafted "road maintenance agreement" under the provisions of the "Road Law" and/or the Second Class Township Code. A Township of the Second Class can agree to waive the weight limit on a Township Road for an overweight carrier--usually coal mining companies or timber producers--in exchange for a Road Bond that secures the cost of repairing any damage to the Township Road caused by the overweight truck traffic. Ainsley Lane had a 10,000 pound weight limit because it was originally little more than a low-traffic drive[]way providing access to only five properties (including the ballfield and the Laskey property on opposite corners at the beginning of [Ainsley] Lane, the Gallo property along [Ainsley] Lane, and the Texas Eastern property at the end of [Ainsley] Lane). The Texas Eastern pipe trucks, in contrast, weighed as much as 80,000 pounds, or even more. Both parties to the road maintenance agreement understood that such traffic had damaged and would continue to damage the road. In an effort to cooperate, the Township allowed Texas Eastern to use the road, and Texas Eastern used its own equipment to add additional "base" to the road, consisting of a layer or layers of stone. Notably, the Second Class Township Code and/or the Road Law permits a Township to allow an overweight trucking operation to let a road deteriorate while in use, provided that the user provides financial security to rebuild the road when the overweight use ceases. Since Texas Eastern is such a large and profitable company, instead of posting a surety bond, it chose to simply pay the estimated cost of repair in advance.

Trial Ct. Stmt. in Lieu of Op., 12/13/19, at 3-4. The Trial Court then opined that "[t]he Township's mistake was in allowing Texas Eastern to draft the document captioned 'Release' . . . instead of captioning it and drafting it properly as a 'Road Maintenance Agreement.'" *Id.* at 4.

With regard to the parties' issues on appeal, the Trial Court stated:

This Court chooses not to address the individual issues [raised by the Township] piecemeal, as this Court is of the opinion that *it was inappropriate for Texas Eastern to attempt to assign its claim against [the] Township arising from the 2011 "Release," that it was inappropriate for Laskey to accept the assignment, and that all proceedings thereafter should be nullified.* In other words, *if this Court still had the power to do so, it would grant judgment to [the] Township notwithstanding the verdict of the jury.*

That said, the [Trial Court] struggles to articulate exactly why the assignment was inappropriate and should be nullified. Certainty it completely changed "the gist of the action" from a negligence action to a contractual action.

Moreover, it is nonsensical for anyone to receive a refund of the money Texas Eastern paid to [the] Township for its destruction of and ongoing use of the Township [r]oad, "Ainsley Lane." The taxpayers of [the] Township have no reason to subsidize the actions of Texas Eastern. The damage is real, and will ultimately be expensive to repair. Because the settlements left open only the claim for restitution for the road maintenance agreement[,] [the] Township wasn't able to present the defense that Laskey prevented the installation of the "catch basin" by refusing the necessary easement. *Whether that is or is not a proper defense has not been resolved. That is an obvious danger of mixing negligence and contract theories in a single action.*

. . . .

Finally, champerty--sale of a lawsuit--used to be completely illegal, and this case is a good illustration of why it should still be prohibited. *There was no logical relationship between any negligence damages suffered by Laskey and the contractual claim asserted by Texas Eastern. Not only was the undersigned groping on how to instruct the jury, the jury appeared to be completely bewildered by the nature of the proceedings.*

9

*That does leave open the question as to whether the attempted assignment of a non-assignable road maintenance agreement causes the settlement between Texas Eastern and Laskey to be nullified.* That question was the reason this Court wanted to hear from Texas Eastern. Texas Eastern's counsel was permitted to withdraw because his client was assertedly "effectively not a participant," and the caption was amended pretrial to delete Texas Eastern to avoid confusing the jury, but *Texas Eastern has never been dismissed as a party. This Court cannot conceive of any good reason for Texas Eastern to ignore the invitation to resume participating in the case.*

*Id.* at 9-11 (emphasis added).

The Trial Court then briefly addressed Laskey's request for prejudgment interest, opining:

[E]ven if the $50,000 [damages] award is upheld, *an award of 6% simple interest prior to judgment is excessive and confiscatory* when there is no possibility that [the] Township did or could have earned anything like that rate of return on the money deposited as security for the repair of Ainsley Lane. *This Court would have awarded only the amount actually earned by the Township as interest in the intervening period.*

*Id.* at 11 (emphasis added). The Trial Court concluded with the following sentence: "A final decision and instructions from the Commonwealth Court will be most welcome." *Id.* at 12.

On December 27, 2019, this Court consolidated the appeals at 1224 C.D. 2019 and 1350 C.D. 2019 for disposition.

## Analysis

On appeal, the Township raises numerous issues, many of which were raised in its Post-Trial Motion.[4] Laskey also cross-appeals on the issue of prejudgment

---

[4] Although the Township purports to raise eight separate issues in its Statement of Questions Involved, the issues are misnumbered and some are duplicative. As Laskey correctly **(Footnote continued on next page…)**

interest that was raised in its Post-Trial Motion. However, apparently due to difficulties with summer scheduling and a staffing change, the Trial Court never ruled on either party's Post-Trial Motion, despite previously scheduling a hearing to consider them. Laskey eventually filed a Praecipe for Entry of Judgment with the Trial Court, and Judgment was entered on August 29, 2019, even though the Post-Trial Motions were still pending.

Generally, "judgment cannot be entered until *after the trial court rules on post-trial motions*, which necessarily means that post-trial motions must precede the entry of a judgment." *Mitchell v. Milburn*, 199 A.3d 501, 505 (Pa. Cmwlth. 2018) (emphasis added); *see Oak Tree Condo. Ass'n v. Greene*, 133 A.3d 113, 116 (Pa. Cmwlth. 2016) ("[W]here a trial has taken place and timely post-trial motions have been filed pursuant to [Pa. R.C.P. No.] 227.1, *the appeal period does not begin to run until the trial court has issued a decision on the post-trial motions*.") (emphasis added).

It is true that, under Pa. R.C.P. No. 227.4(b), a party may praecipe for entry of judgment if the trial court does not rule on a post-trial motion *within 120 days*. Here, however, Laskey did not file its Praecipe for Entry of Judgment after the expiration of the 120-day period following the filing of its Post-Trial Motion as required by Rule 227.4(b). Rather, Laskey filed its Praecipe only *115 days* after the filing of its Post-Trial Motion (although 120 days had passed since the Township filed its Post-Trial Motion). *See Jahanshahi v. Centura Dev. Co., Inc.*, 816 A.2d

---

observes in its brief, *see* Laskey Br. at 7 n.1, the Township's issues on appeal can be condensed into four primary issues. The Township challenges: (1) the Trial Court's rulings on counsels' objections during the video depositions of Stephen Robert Laskey and Texas Eastern's then-counsel, Donald Lewis, Esquire; (2) the Trial Court's jury instructions regarding the computation of Texas Eastern's attorneys' fees; (3) the Trial Court's jury instructions regarding the interpretation and application of the 2011 Release, the 2017 Release, and the 2017 Assignment; and (4) the Trial Court's ruling on the Township's Motion for Directed Verdict.

1179, 1183 (Pa. Super. 2003) ("[A]ny party may praecipe for entry of final judgment, notwithstanding the pendency of post-trial motions, *if more than 120 days have passed and the trial court has failed to enter an appropriate order*.") (emphasis added).

Significantly, the Trial Court scheduled a hearing on Laskey's Post-Trial Motion in May 2019, but canceled the hearing due to the parties' unavailability on the scheduled date. Thereafter, on June 24, 2019, the Township filed a motion asking the Trial Court to reschedule the hearing, but the Trial Court did not rule on that request. In its Statement in Lieu of Opinion filed after the appeals, the Trial Court explained that it intended to hold a hearing on Laskey's Post-Trial Motion, but the scheduling of that hearing was somehow overlooked. The Trial Court also stated that, in hindsight, it would have considered and heard arguments on *both parties'* Post-Trial Motions had the hearing taken place.

Because both Post-Trial Motions stemmed from the same jury verdict, we conclude that the Trial Court erred in reducing the verdict to Judgment less than 120 days after the filing of Laskey's Post-Trial Motion, especially where the Trial Court clearly intended (and attempted) to hold a hearing on the parties' Post-Trial Motions and the Township requested such a hearing.

## Conclusion

Given the unusual procedural posture of this case, as well as the Trial Court's pronouncements in its Statement in Lieu of Opinion, we are compelled to vacate the August 29, 2019 Judgment and remand this matter to the Trial Court for: (1) a hearing on the issue of prejudgment interest;[5] and (2) rulings on the parties'

---

[5] The Township only requested a hearing on the issue of prejudgment interest raised in Laskey's Post-Trial Motion. However, in its Statement in Lieu of Opinion, the Trial Court **(Footnote continued on next page…)**

outstanding Post-Trial Motions. Should either party file an appeal to this Court following the Trial Court's rulings on the Post-Trial Motions, we further direct the Trial Court to prepare a detailed Pa. R.A.P. 1925(a) Opinion explaining its reasons for its rulings.

_____
ELLEN CEISLER, Judge

---

indicated that it would have considered the issues raised in both parties' Post-Trial Motions had it conducted a hearing. Thus, while we limit our directive to a remand hearing on prejudgment interest, the Trial Court may, in its discretion, consider other issues raised in the Post-Trial Motions at the remand hearing.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Natalie R. Laskey, Executrix of The Estate of Stephen Robert Laskey | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | No. 1224 C.D. 2019 |
| | : | |
| North Union Township, a second class municipality of the Commonwealth of Pennsylvania, Appellant | : : : : : | |
| | : | |
| Natalie R. Laskey, Executrix of The Estate of Stephen Robert Laskey, Appellant | : : : : | |
| | : | |
| v. | : | No. 1350 C.D. 2019 |
| North Union Township, a second class municipality of the Commonwealth of Pennsylvania | : : : : | |

# **O R D E R**

AND NOW, this 9th day of November, 2020, the Judgment of the Court of Common Pleas of Fayette County (Trial Court), entered August 29, 2019, is hereby VACATED, and we hereby REMAND this matter to the Trial Court for further proceedings consistent with the foregoing Opinion.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge